UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LOGAN FINANCE CORPORATION,

                        Plaintiff,

-against-

ASHLEY McLAUGHLIN,

                        Defendant.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-5800(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this breach of contract and defamation action is Defendant Ashley McLaughlin's ("McLaughlin" or "Defendant") motion to dismiss Plaintiff Logan Finance Corporation's ("Logan Finance" or "Plaintiff") Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [12]. She alternatively moves to transfer venue to the Eastern District of Texas, where she resides. *Id.* Plaintiff opposes. DE [12-4]. Defendant's motion is granted and this matter is transferred to the Eastern District of Texas.

**I.    BACKGROUND**

    **A.    Factual Background**[1]

Plaintiff is an Arkansas corporation that is "in the business of funding mortgage loans." *See* Complaint ("Compl."), DE [1-1], ¶¶ 1, 4-5; Declaration of Donald

---

[1] In deciding a motion to dismiss for lack of personal jurisdiction, "[a] Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials." *Trade Pay LLC v. Horowitz*, No. 21-CV-442(ENV)(ARL), 2023 WL 12030712, at *1 n.1 (E.D.N.Y. Oct. 5, 2023) (quoting *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 115 n.1 (S.D.N.Y. 2020)).

Pace in Opposition to Motion to Dismiss ("Pace Decl."), DE [12-6], ¶ 2. Although Plaintiff is not licensed as a mortgage banker in New York, it is authorized to purchase commercial mortgage loans originated by other lenders. Pace Decl. ¶ 4. Logan Finance has a principal place of business in Suffolk County, New York, with headquarters located at 1393 Veterans Memorial Highway, Hauppauge, New York. *Id.*; Compl. ¶¶ 1, 4. Defendant is a "lifelong citizen of the State of Texas" and currently resides in Nevada, Texas. *See* Declaration of Ashley McLaughlin in Support of Motion to Dismiss ("McLaughlin Decl."), DE [12-2], ¶ 4; Compl. ¶ 2.

Pursuant to a July 25, 2022 Employment Offer Letter Agreement (the "Agreement") Defendant accepted a position at Logan Finance as Vice President of Business Optimization. Compl. ¶ 6; McLaughlin Decl. Ex. A. Defendant interviewed for the position from her home in Texas, and asserts that it "was understood and agreed between [herself] and the company that [she] would work remotely from [her] home in Nevada, Texas." McLaughlin Decl. ¶ 5. To this end, the Agreement states that McLaughlin "will work remotely." *Id.* at Ex. A. The Agreement incorporates by reference a document titled "Standard Terms of Offer" (the "Offer Terms"), which the Agreement identifies as "material terms and conditions." *Id.* The Offer Terms provide in relevant part:

> **Governing Law; Waiver of Jury Trial:** This offer letter shall be construed and enforced in accordance with the laws of the state in which the Company office from which you work is located or, if a remote employee, the state from which you work remotely, in each case, as indicated in the Company's records.

*Id.*

Moreover, relevant for purposes of Logan Finance's claims, the Offer Terms contain a "Confidential and Proprietary Information" provision (the "Confidentiality Provision") that provides:

> As an employee of [Logan Finance], you will have access to certain confidential and proprietary information of the Company and you may, during the course of your employment, develop trade secret information or know-how that will be the property of the Company. As a condition of accepting employment with the Company, you are prohibited from disclosing any confidential or proprietary information of the Company to third-parties during and subsequent to your employment. Confidential and proprietary information concerning the Company, its products, customers, prospective customers, methods of operation, pricing, suppliers, shareholders, and employees acquired in the course of your employment, including all financial information and customer lists, is to be used solely for Company purposes and never to be discussed with or divulged to unauthorized individuals or entities. Your obligation to maintain the confidentiality of such information and to use it only for authorized Company purposes continues after your employment ends.

Compl. ¶ 15.

Defendant worked for Plaintiff from August 2, 2022 until May 10, 2024. *See* McLaughlin Decl. ¶ 5; Declaration of Terrance Mitchell in Opposition to Motion to Dismiss ("Mitchell Decl."), DE [12-7], ¶ 2. Her "job responsibilities were focused on processing mortgage loans for the Company" and "included participating in or conducting daily meetings with her team and overseeing the Account Managers responsible for moving loans from application to closing." Mitchell Decl. ¶ 4. Although she "very occasionally . . . visited and worked out of the company's Texas office," she otherwise worked exclusively from her home. McLaughlin Decl. ¶¶ 5-7. In any event, she only worked from Texas and "never stepped foot into New York State" during her employment. *Id.* at ¶ 7.

3

Defendant reported to Plaintiff's Chief Operating Officer, Nicholas Imbimbo, who worked remotely from his home in Sand Spring, Oklahoma. Mitchell Decl. ¶ 3. According to Logan Finance's Chief People Officer, Terrance Mitchell, when Defendant was hired, she was "informed of the Company's significant presence in New York, and that she would otherwise be collaborating regularly with [New York] based employees." *Id.* at ¶ 7. Mitchell asserts that McLaughlin "regularly communicated via telephone, Zoom meetings, and email with Underwriting, Disclosure, Closing and Post-Closing Departments located in Plaintiff's Hauppauge, New York headquarters." *Id.* He does not describe the nature or purpose of any specific communications. Mitchell further states that during her employment, McLaughlin "had approximately forty-four (44) employees reporting directly to her from various departments." *Id.* at ¶ 5. Three were based in New York. *Id.* Likewise, Mitchell identifies by name three additional New York-based individuals with whom Defendant "regularly interacted," but who did not report to Defendant. *Id.* at ¶ 7. Mitchell does not describe the nature of, or reason for, any such purported interactions. *Id.*

On May 10, 2024, McLaughlin resigned from her position at Logan Finance and subsequently began working for a competitor. Compl. ¶¶ 10-11. Although the merits of Plaintiff's claims are not presently at issue, Logan Finance identifies four forms of alleged misconduct that serve as the bases of its causes of action:

4

- McLaughlin allegedly misappropriated confidential information by taking confidential personnel information to recruit or solicit certain employees to Defendant's new employer. *Id.* at ¶¶ 14-22, 54-55.[2]

- McLaughlin allegedly destroyed Plaintiff's property by both altering a "staffing capacity tool which enables proper provision coverage for certain employees" and by deleting over 80,000 emails. *Id.* at ¶¶ 24-25.

- McLaughlin allegedly told certain employees that Plaintiff "would undergo massive layoffs" in an effort to convince employees to resign. *Id.* at ¶¶ 31-36.

- McLaughlin allegedly told certain employees that Plaintiff's Chief Revenue Officer and Head of Mortgage Operations were responsible for the failure of a previous mortgage company and would be the cause of Plaintiff's failure. *Id.* at ¶ 44.

B. **Procedural Background**

By way of a July 26, 2024 Complaint, filed in the Supreme Court of the State of New York, Suffolk County, Plaintiff commenced this action against McLaughlin, asserting causes of action for: (1) breach of the Confidentiality Provision of her Agreement by soliciting Logan Finance employees to go with her to her new employer; (2) destruction of company property, including altering a formula in a proprietary staffing tool and deleting over 80,000 emails; (3) slander *per se* related to statements about both the alleged impending failure of Logan Finance and whether Logan Finance executives caused harm to a prior company; and (4) misappropriation of confidential personnel information in violation of the Confidentiality Provision. *Id.* at ¶¶ 14-56. On August 20, 2024, Defendant removed this action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. DE [1]. On October 18, 2024, McLaughlin

---

[2] These allegations form the bases of Plaintiff's first cause of action (Breach of Agreement) and fifth cause of action (Misappropriation of Confidential Information).

filed the instant motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer this matter to the Eastern District of Texas. DE [12]. The motion is granted.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) "permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 562 (E.D.N.Y. 2011). In considering a motion to dismiss for lack of personal jurisdiction, a court may rely on materials beyond the pleadings. *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 225 (S.D.N.Y. 2013) (holding that, when considering a 12(b)(2) motion, "the Court may also rely on submitted affidavits and other supporting materials submitted in relation to the motion"). "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); *see Troma Ent., Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) ("A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."). In diversity cases, the court looks to the jurisdictional rules of the state in which it is located. *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).

Courts recognize two types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27, 134 S. Ct. 746,

754 (2014). Specific jurisdiction exists "when the cause of action sued upon arises out of the defendant's activities in a state," while general jurisdiction, "permits a court to adjudicate any cause of action against the . . . defendant, wherever arising, and whoever the plaintiff." *Austin Env't Corp. v. Margarita Express, LLC,* No. 21 Civ. 4385(PED), 2022 WL 1443356, at *7 (S.D.N.Y. May 6, 2022) (internal citations omitted); *see Hoffritz for Cutlery, Inc. v. Amajac, Ltd.* 763 F.2d 55, 58 (2d Cir. 1985) (holding that general jurisdiction, for both corporations and individuals, requires a "continuous and systematic course of doing business in New York"). For general jurisdiction to exist over an individual defendant, the defendant "must be domiciled in New York, served in New York, or have otherwise consented to the Court's jurisdiction." *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014). Plaintiff does not assert that any of these circumstances exist. Accordingly, the Court focuses on specific jurisdiction.

To determine whether the Court has specific personal jurisdiction over a non-domiciliary, New York courts engage in a two-part inquiry. *See Chloe v. Queen Bee of Beverly Hills,* LLC, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243-44 (2d Cir. 2007)). Initially, the Court determines "whether Defendants' acts bring them within the reach of [New York's] long-arm statute . . . ." *EnviroCare Techs., LLC v. Simanovsky,* No. 11-CV-3458(JS)(ETB), 2012 WL 2001443, at *2 (E.D.N.Y. June 4, 2012) (citing *Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 165 (2d Cir. 2005)). If so, the Court then considers

whether the exercise of personal jurisdiction is consistent with the due process guarantees of the U.S. Constitution. *Id.*

### III. DISCUSSION

Defendant seeks dismissal on the grounds that she is not subject to personal jurisdiction in New York, or alternatively, that this matter be transferred to the Eastern District of Texas, where she resides. McLaughlin's motion is granted and this action is transferred to the Eastern District of Texas.

#### A. This Court Lacks Personal Jurisdiction Over Defendant

Plaintiff seeks to invoke N.Y. C.P.L.R. § 302(a)(1) to establish personal jurisdiction over McLaughlin. Compl. ¶ 3; Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, ("Pl.'s Opp'n"), DE [12-10], at 5-10. Pursuant to N.Y. C.P.L.R. § 302(a)(1), a party that "transacts any business within the state or contracts anywhere to supply goods or services in the state" is subject to personal jurisdiction in New York." In evaluating whether a party is subject to personal jurisdiction in New York under § 302(a)(1), "the court analyzes (1) whether the defendant 'transacts any business' in New York and, (2) if so, whether the cause of action 'arises from' such a business transaction." *Shelbourne Glob. Sols., LLC v. Gutnicki LLP*, 658 F. Supp. 3d 104, 113 (E.D.N.Y. 2023) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246). "To meet the transacting business element under N.Y. C.P.L.R. § 302(a)(1), it must be shown that a party 'purposely availed [herself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws . . . .'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104

8

(2d Cir. 2006) (quoting *Banks Brussels Lambert*, 171 F.3d at 787). The standard "is hardly a precise one; the court must look at the aggregation of defendant's activities, coupled with the selective weighing of the various actions." *Eastboro Found. Charitable Tr. v. Penzer*, 950 F. Supp. 2d 648, 658 (S.D.N.Y. 2013) (internal citation omitted); *see PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) ("To determine whether a sufficient nexus exists, a court must evaluate the totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit.") (internal quotation omitted).

Applying these standards, Plaintiff has failed to meet its burden of establishing personal jurisdiction over McLaughlin pursuant to N.Y. C.P.L.R. § 302(a)(1). Defendant interviewed for her position and negotiated the terms of her Agreement from Texas. McLaughlin Decl. ¶¶ 5-6. The parties contractually agreed that McLaughlin would work remotely from Texas, which she did, and that Texas law governs the terms of her employment. *Id.* at ¶¶ 6-7, Ex. A. Indeed, during her employment, Defendant "never stepped foot into New York State," let alone for purposes related to her job. *Id.* at ¶ 7. Although McLaughlin communicated with certain colleagues in New York, these facts, accepted in their totality, are insufficient to establish personal jurisdiction. *See, e.g.*, *Berkshire Cap. Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008) (holding personal jurisdiction did not exist based upon negotiation of an agreement by telephone calls and emails from Illinois to New York); *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) (declining to find personal jurisdiction "solely on the basis of defendant's

9

communication from another locale with a party in New York"); *Paxful, Inc. v. Strandberg*, No. 21-CV-3331(PGG)(SN), 2022 WL 6241241, at *4 (S.D.N.Y. June 21, 2022) (holding that the defendant did not "transact business" in New York where the plaintiff identified "some calls and communications with [the plaintiff's] employees"); *Wego Chem. & Min. Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 384-85 (E.D.N.Y. 2013) (concluding that allegations that the defendant made telephone calls and sent emails directed to plaintiff in New York were insufficient to support jurisdiction); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself."). Accordingly, Logan Finance's argument that Defendant "transacted business" in New York, *see* Pl.'s Opp'n at 5-8, is unavailing.

Moreover, even accepting that McLaughlin interacted with New York-based employees, Plaintiff fails to establish that McLaughlin herself was "transacting business" as contemplated by the long-arm statute. Her role was "supportive in nature and did not involve selling the company's products or entering into agreements." *See* Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem."), DE [12-1], at 5; McLaughlin Decl. ¶ 9. Plaintiff neither alleges nor offers evidence that McLaughlin herself actually transacted business in New York. *DirecTV Latin Am., LLC*, 691 F. Supp. 2d at 420; *see Roddey v. KPMG L.L.P.*, No. 22-CV-7405(VSB), 2025 WL 1104538, at *5 (S.D.N.Y. Apr. 14, 2025) (holding that

10

personal jurisdiction did not exist where the party "neither received calls while she was in New York, nor did she physically work in New York"); *Troma Ent., Inc. v. Centennial Pictures, Inc.*, 853 F. Supp. 2d 326, 329 (E.D.N.Y. 2012) ("Personal jurisdiction has to be predicated on defendants' actions, not plaintiff's.").

To the extent Plaintiff disputes that McLaughlin's role was more substantial than "supportive in nature," *see* Mitchell Decl. ¶ 2, Logan Finance does not identify any business that McLaughlin actually transacted in New York. To the contrary, Plaintiff itself acknowledges that Defendant's duties involved overseeing "certain functions relating to processing of mortgage loans and ***supporting sales executives***." Compl. ¶ 8 (emphasis added). Likewise, Mitchell asserts that Defendant's job duties entailed "overseeing the Account Managers responsible for moving loans from application to closing." Mitchell Decl. ¶ 4. Although her title of "Vice President" may carry an air of importance, it does not negate the fact that Plaintiff does not identify any business that Defendant transacted in New York.

Mitchell further asserts that "Defendant did not only report to supervisors in Texas," and that she "only reported to a supervisor in Texas for the last two of her twenty-one months with Plaintiff." *Id.* at ¶ 3. The only other individual Mitchell identifies McLaughlin as reporting to, however, "worked remotely from his home in Sand Spring, Oklahoma." *Id.* Thus, McLaughlin never reported to anyone in New York. Moreover, Mitchell asserts that McLaughlin had approximately 44 employees who reported to her. *Id.* at ¶ 5. Of these, only three were based in New York. *Id.* Mitchell further claims that McLaughlin "interacted with New York based sales

11

personnel." *Id.* at ¶ 7. These individuals did not report to McLaughlin, however, and Mitchell does not describe the manner or frequency of any such interactions, nor does he state that these interactions related to transacting business. Likewise, although Mitchell states that Defendant "regularly communicated via telephone, Zoom meetings, and email with Underwriting, Disclosure, Closing and Post-Closing Departments" located in Plaintiff's New York office, *id.*, he again does not describe the nature or purpose of any such communications. Ultimately, Plaintiff's interactions with New York are far too attenuated to establish personal jurisdiction. *See Berkshire Cap. Grp., LLC*, 307 F. App'x at 481; *Beacon Enters., Inc.*, 715 F.2d at 766; *Paxful, Inc.*, 2022 WL 6241241, at *4.

The cases that Logan Finance cites in opposition do not compel a different conclusion. For example, *Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265 (E.D.N.Y. 2015) involved an employer who transacted business in New York. The Court held that the employer was subject to jurisdiction because it hired the employee "knowing that she would live and work in Brooklyn." *Id.* at 271. Likewise, in *Fischbarg v. Doucet*, 9 N.Y.3d 375, 849 N.Y.S.2d 501 (2007), the defendant purposefully sought and retained a New York attorney for the purposes of defending her company. The New York Court of Appeals held that personal jurisdiction existed because the defendant "projected [herself] into [New York's] legal market" and solicited the plaintiff's business in New York. 9 N.Y.3d at 383, 849 N.Y.S.2d at 501. Finally, in *Bank Brussels Lambert*, 305 F.3d at 128, the individual defendant had an apartment in New York "at least partially . . . for the purpose of better servicing New

York clients." The Second Circuit held that this was sufficient to establish purposeful availment under New York's long-arm statute. *Id.*

McLaughlin's interactions with New York are far less purposeful or intentional than those in the cases she cites. Even affording Plaintiff the most liberal reading possible, at best, McLaughlin occasionally interacted with certain colleagues located in New York. This is insufficient to establish that the totality of McLaughlin's interaction with New York satisfies N.Y. C.P.L.R. § 302(a)(1)'s transacting business requirement. *See Timothy Coffey Nursery Landscape v. Soave*, No. 17-CV-1436(SJF)(ARL), 2018 WL 11211498, at *7 (E.D.N.Y. Jan. 8, 2018) (holding that personal jurisdiction did not exist pursuant to N.Y. C.P.L.R. § 302(a)(1) where "the nature and quality of Defendants' contacts with New York were insufficient to meet the 'transacting business' prong" of the statute); *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 155 (E.D.N.Y. 2014) ("Telephone calls and other communications to New York, standing on their own, do not necessarily confer jurisdiction."); *U.S. Theater Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 596 (S.D.N.Y. 1993) (holding that personal jurisdiction did not exist where the defendant did not intend to do business in New York). Accordingly, Plaintiff has failed to satisfy its burden of establishing the existence of personal jurisdiction and McLaughlin's motion to dismiss for lack of personal jurisdiction is granted.[3]

---

[3] Having concluded that Plaintiff failed to establish the first prong of the jurisdictional requirement, the Court need not consider the Constitutional due process factor of the personal jurisdiction analysis. *Best Van Lines, Inc.*, 490 F.3d at 244 ("If jurisdiction is statutorily impermissible, of course, we need not reach the question of its constitutionality.").

### B.     <u>Transfer to the Eastern District of Texas is Appropriate</u>

Pursuant to 28 U.S.C. § 1404, "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Relevant here, 28 U.S.C. § 1406 provides the court "discretion to either dismiss the [complaint] or transfer the case to another district or division in which it could have been brought." 28 U.S.C. § 1406(a). "In determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum; and (2) whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Mavashev v. Kaldykulov*, No. 22-CV-906(PKC)(ST), 2024 WL 1345802, at *12 (E.D.N.Y. Mar. 30, 2024) (quoting *Flores v. United States*, 142 F. Supp. 3d 279, 286 (E.D.N.Y. 2015)). Courts have "broad discretion" to evaluate whether transfer would promote justice and convenience, and consider such requests "on a case-by-case basis." *MDG Real Est. Glob. Ltd. v. Berkshire Place Assocs., LP*, 513 F. Supp. 3d 301, 308 (E.D.N.Y. 2021) (quoting *D.H. Blair & Co., Inc.*, 462 F.3d at 106); *see In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) ("[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis.").

Plaintiff's sole basis for opposing transfer to the Eastern District of Texas is that it "intends to call many of its witnesses in this matter who reside in New York . . . ." Pl.'s Opp'n at 11-14. Logan Finance does not dispute that personal jurisdiction exists in Texas or that this action is properly venued in the Eastern District of Texas.

Moreover, by moving to transfer venue, Defendant concedes that personal jurisdiction exists in Texas. *See Palmore v. Napoli Shkolnik PLLC*, No. 23-CV-1616(ER), 2024 WL 1330003, at *11 (S.D.N.Y. Mar. 28, 2024) (holding that a transferee forum was appropriate in part because "[d]efendants themselves request the transfer, and therefore consent to the exercise of personal jurisdiction") (internal citations omitted); *Nuss v. Guardian Life Ins. Co. of Am.*, No. 20-CV-9189(MKV), 2021 WL 1791593, at *2 (S.D.N.Y. May 5, 2021) ("Defendant has impliedly consented to personal jurisdiction in Georgia by moving to transfer venue to the Northern District of Georgia."); *Evonik Corp. v. Amani*, No. 16 Civ. 8319(AKH), 2018 WL 3159823, at *1 (S.D.N.Y. Jan. 10, 2018) (finding a transferee forum appropriate in part where "defendants have consented to the transfer under § 1404(a)"); *Bent v. Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555(PAE), 2016 WL 153092, at *5 (S.D.N.Y. Jan. 12, 2016) (concluding that transferee district has "personal jurisdiction over [defendant] by virtue of [defendant's] express consent").

The Court offers no opinion on the merits of Plaintiff's claims or Defendant's defenses. Nevertheless, having concluded that personal jurisdiction does not exist in New York, but that it does exist in Texas by virtue of McLaughlin's concession, dismissal of the action in this Court and transfer of this action to the Eastern District of Texas is appropriate.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's motion is granted in its entirety and this matter will be transferred to the Eastern District of Texas.

Dated:     Central Islip, New York
           May 1, 2025                   **SO ORDERED**

                                                  /s/ Steven I. Locke
                                                  STEVEN I. LOCKE
                                                  United States Magistrate Judge